IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL & TRANSPORTATION WORKERS, TRANSPORTATION DIVISION, | CASE NO. 1:19-CV-01373 |
| | JUDGE PAMELA A. BARKER |
| Petitioner, | |
| -vs- | |
| | MEMORANDUM OF OPINION AND ORDER |
| CANADIAN NATIONAL RAILWAY COMPANY, | |
| Respondent. | |

This matter comes before the Court upon the parties' cross-motions for summary judgment. Petitioner International Association of Sheet Metal, Air, Rail & Transportation Workers, Transportation Division ("SMART-TD") filed a Motion for Summary Judgment on November 8, 2019. (Doc. No. 14.) Respondent Illinois Central Railroad Company ("Illinois Central")[1] filed a brief in opposition to SMART-TD's Motion for Summary Judgment on January 17, 2020, to which SMART-TD replied on January 31, 2020. (Doc. Nos. 18, 20.)

Illinois Central also filed a Motion for Summary Judgment on November 8, 2019. (Doc. No. 15.) SMART-TD filed a brief in opposition to Illinois Central's Motion for Summary Judgment on January 17, 2020, to which Illinois Central replied on January 31, 2020. (Doc. Nos. 17, 19.)

---

[1] Illinois Central was improperly named as Canadian National Railway Company d/b/a Illinois Central Railroad. (Doc. No. 3, Answer to Petition, at ¶ 1.)

For the following reasons, SMART-TD's Motion for Summary Judgment (Doc. No. 14) is GRANTED, and Illinois Central's Motion for Summary Judgment (Doc. No. 15) is DENIED.

## I. Background

Illinois Central is engaged in the transportation of freight by rail in interstate commerce. (Doc. No. 3, Counter-Petition, at ¶ 1; Doc. No. 8 at ¶ 1.) SMART-TD is a labor organization and represents Illinois Central employees in the craft or class of "Conductors and Trainmen," which consists of Conductors, Brakemen and Switchmen (collectively, "Trainmen"). (Doc. No. 3, Counter-Petition, at ¶¶ 2, 7; Doc. No. 8 at ¶¶ 2, 7.) SMART-TD and Illinois Central are parties to a collective bargaining agreement ("CBA"), which establishes the rates of pay, rules, and working conditions of Trainmen represented by SMART-TD. (Doc. No. 3, Counter-Petition, at ¶ 8; Doc No. 8 at ¶ 8.)

Under the CBA, Trainmen represented by SMART-TD who are promoted to management positions are entitled to retain their seniority by continuing to pay dues to SMART-TD. (Doc. No. 13-2 at 4.) The CBA also provides that "[n]o Trainman shall be disciplined without a fair hearing (investigation) by an officer of the Company." (*Id.* at 242.)

In 2003, Illinois Central hired Conan Castellucci ("Castellucci"). (*Id.* at 264.) During his employment with Illinois Central, Castellucci held a variety of positions, including Laborer, Carman, Conductor, Yardmaster, Trainmaster, and Assistant Superintendent. (*Id.*) In 2017, Castellucci was working as an Assistant Superintendent—which is a management level position not covered by the CBA—when Illinois Central alleged that he had engaged in a variety of misconduct and dishonest behavior. (*Id.*) Specifically, Illinois Central alleged that from October 23, 2017 to October 31, 2017, Castellucci "had engaged in a pattern of failing to properly conduct, validate, and/or report Safety Engagement Tests and/or making false and/or dishonest statements and reports regarding those tests."

(*Id.*) Subsequently, on November 6, 2017, Castellucci resigned from his position as Assistant Superintendent and reverted to his position as a Trainman where he had retained his seniority. (*Id.*) On November 7, 2017, Illinois Central then directed Castellucci to attend a formal investigation on November 14, 2017 concerning his alleged misconduct. (*Id.* at 265.) On November 22, 2017, after the investigation, Illinois Central notified Castellucci that he had been found guilty as charged and was dismissed effective immediately. (*Id.*)

SMART-TD filed an appeal of Illinois Central's decision to dismiss Castellucci from his Trainman position, which Illinois Central denied on March 16, 2018. (*Id.* at 24-32.) Thereafter, the parties submitted the dispute to Public Law Board No. 7559 (the "Board"), an arbitration panel created pursuant to an agreement between SMART-TD and Illinois Central. (*See id.* at 270-78.) The parties' agreement creating the Board limits its jurisdiction to disputes "that otherwise may be referred to the National Railroad Adjustment Board (NRAB)." (*Id.* at 271.)

Before the Board, SMART-TD argued, among other things, that Illinois Central was not required to hold a formal investigation to discipline Castellucci while he held a managerial position. (*Id.* at 265.) Further, SMART-TD asserted that Illinois Central demoted Castellucci when it required him to give up his position as an Assistant Superintendent and exercise his seniority back to his position as a Trainman. (*Id.*) In support of this contention, SMART-TD argued that the record showed that when Castellucci was removed from his management position, he notified his immediate superior he would exercise his seniority as a Trainman, and his superior took no exception to Castellucci returning as a Trainman, but requested that Castellucci give a previously scheduled deposition on behalf of Illinois Central. (*Id.* at 265.) Thus, SMART-TD claimed that the subsequent dismissal of Castellucci as a Trainman was "redundant, double jeopardy and constituted 'two bites

3

of the apple'" because the dismissal was discipline for the same alleged misconduct that he had already previously been disciplined for as an Assistant Superintendent when he was required to forfeit that position. (*Id.* at 265-66.) In contrast, Illinois Central argued that it was required to allow Castellucci to return to his position as a Trainman and was then obligated to call for a formal investigation and prove its charges. (*Id.* at 267.)

On April 23, 2019, the Board found in favor of Castellucci, holding:

The Claimant was promoted from the craft to an "at-will" management position and while assigned to that position Claimant was subject to the same fair treatment as any other "at-will" employee whether that person was from a craft or had been hired directly off the street. Claimant's retention of seniority allowed him the right to return to his craft if he decided that he no longer wanted to hold an "at-will" position or he was demoted. ***As stated above there are exceptions to the dismissal of "at-will" employees, however, there is nothing in the parties['] Agreement that requires the Carrier to automatically allow an employee to return to his/her craft for what it believes to be dismissible behavior, while holding a management position, nor is there an additional requirement that the Carrier must call a formal Investigation to prove its charges of managerial misbehavior (the Board notes that this determination is limited to the instant Agreement). Claimant was subject to [the] same Policies and Rules that governed "at-will" employees who did not retain craft seniority, therefore, when he was removed from his position as Assistant Superintendent and allowed to return to his craft he was effectively disciplined with a demotion.*** The Organization correctly argued that it had a responsibility to represent the Claimant for any alleged inappropriate behavior while Claimant was working in the craft whereas the allegations made against the Claimant, in this instance, were for actions while Claimant held a non-craft position and should not have been the subject of a formal Investigation. ***The Board is in agreement with the Organization that Claimant's retention of seniority was a "safety net" that guaranteed him a right to return to his craft for multiple reasons, but it did not require the Carrier to hold a formal Investigation for Claimant's alleged misdeeds while holding a managerial position. Therefore, it is determined that Carrier first disciplined the Claimant when it demoted him from the position of Assistant Superintendent and advised him to return to his craft after which Carrier improperly disciplined Claimant a second time with termination for the same alleged offenses.***

The Board having determined that the Claimant was twice disciplined for the same offense will not review the merits of the dispute nor will it make any determination of whether or not the allegations against the Claimant had merit.

4

(*Id.* at 268-69 (emphasis added).) The Board ordered that Castellucci "be returned to service with seniority intact, all benefits unimpaired and made whole for loss of all monies since being held out of service until reinstated in accordance with the Agreement." (*Id.* at 269.)

On June 13, 2019, SMART-TD filed a Petition to Enforce Public Law Board Award Under the Railway Labor Act ("Petition"), seeking to enforce the Board's award, with which Illinois Central has refused to comply. (Doc. No. 1.) In response, Illinois Central filed an Answer to Petition to Enforce Public Law Board Award Under the Railway Labor Act and Counter-Petition to Vacate Award ("Counter-Petition"). (Doc. No. 3.) In its Counter-Petition, Illinois Central asserts that the award should be vacated because the Board exceeded the scope of its jurisdiction under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* (*Id.*)

On September 13, 2019, the parties submitted a Stipulated Record. (Doc. No. 13.) And on November 8, 2019, the parties filed their respective Motions for Summary Judgment. (Doc. Nos. 14, 15.) Both Motions have been fully briefed and are ripe for consideration.

**II.    Standard of Review**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006). "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 F. App'x at 508-09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

**III. Analysis**

"The RLA governs disputes between management and labor in the railroad industry." *Bhd. of Locomotive Engineers & Trainmen v. United Transp. Union (BLET v. UTU)*, 700 F.3d 891, 899 (6th Cir. 2012) (citing 45 U.S.C. §§ 151, 153). As the Sixth Circuit has noted, the RLA includes a

mandatory arbitral mechanism, which is meant "to efficiently resolve labor disputes, promote stability in the relationship between rail companies and their employees, and keep such disputes out of the courts." *Id.*  With regard to minor disputes such as that at issue here,[2] once the parties have failed to resolve the dispute through contractual grievance procedures, the dispute is subject to "compulsory and binding arbitration by the National Railroad Adjustment Board (NRAB) or a privately established 'special adjustment board,'" such as the Board established by the parties in this case. *Id.* (citing 45 U.S.C. § 153 First (i); 45 U.S.C. § 153 Second).

A party may file suit in federal district court to either enforce or vacate an arbitration decision rendered by the NRAB or a special adjustment board.  *See* 45 U.S.C. §§ 153 First (p), (q).  However, a court's review of the arbitration decision is "among the narrowest known to the law."  *BLET v. UTU*, 700 F.3d at 899 (quoting *Airline Prof'ls Ass'n of Int'l Bhd. of Teamsters, Local Union No. 1224, AFL–CIO v. ABX Air, Inc.*, 274 F.3d 1023, 1030 (6th Cir. 2001)).  Specifically, "[j]udicial review of Adjustment Board orders is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption."  *Union Pacific R.R. Co. v. Sheehan*, 439 U.S. 89, 93 (1978) (citing 45 U.S.C. § 153 First (q)).  In addition, "reviewing courts are bound by the facts as found by the arbitrator."  *NetJets Aviation, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 486 F.3d 935, 937 (6th Cir. 2007); 45 U.S.C. §§ 153 First (p), (q) ("[T]he findings and order of the division of the Adjustment Board shall be conclusive on the parties.").

---

[2] A minor dispute is a dispute "arising or growing 'out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 303 (1989) (quoting 45 U.S.C. § 152 Sixth; 45 U.S.C. § 153 First (i)).

7

In assessing whether a public law board created pursuant to the RLA failed to conform, or confine, itself to matters within its jurisdiction, the Sixth Circuit has held that courts must "defer to the arbitrator's decision unless the arbitrator 1) acted outside his authority by resolving a dispute not committed to arbitration; 2) committed fraud, had a conflict of interest, or otherwise acted dishonestly in issuing the award; or 3) was not even 'arguably construing or applying the contract' in resolving legal or factual disputes." *BLET v. UTU*, 700 F.3d at 901 (quoting *Michigan Family Res., Inc. v. Serv. Employees Int'l Union Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007)).

In this case, Illinois Central does not contend that the Board failed to comply with the requirements of the RLA or that the Board engaged in fraud or corruption. Instead, Illinois Central asserts that the Board's award should not be enforced and should be vacated because the Board failed to conform, or confine, itself to matters within the scope of its jurisdiction. Illinois Central sets forth three separate and independent ways in which it claims the Board exceeded its jurisdiction, which are each addressed below. (Doc. No. 15-1 at 2-3.)

### a. Whether the Board Exceeded Its Jurisdiction by Adjudicating the Rights of Castellucci as a Management Employee

First, Illinois Central argues that the Board exceeded its jurisdiction by deciding a dispute that was not committed to arbitration. (Doc. No. 15-1 at 10-12.) Specifically, Illinois Central contends that neither the RLA nor the parties' agreement gave the Board jurisdiction to determine Castellucci's rights as an at-will management employee, yet the Board based its decision on actions which it found Illinois Central had taken against Castellucci in his capacity as a manager and created certain rights for management employees. (*Id.*) In response, SMART-TD asserts that the Board adjudicated Castellucci's rights as a Trainman, not as a management employee, and that the Board did not create any rights for management employees. (Doc. No. 17 at 8-9.) The Court finds that the Board did not

8

decide a dispute that was not committed to arbitration, and, thus, the first ground on which Illinois Central relies in support of its request to vacate the Board's award is without merit.

As noted above, the Sixth Circuit has indicated that the NRAB or a special adjustment board fails to conform, or confine, itself to matters within the scope of its jurisdiction when the arbitrator acts outside his authority by resolving a dispute not committed to arbitration. *BLET v. UTU*, 700 F.3d at 901-03. However, "[p]erhaps anticipating that clever parties would attempt to recast a disagreement with an arbitrator's decision as a claim that he acted outside of his authority," the Sixth Circuit has "severely curtailed the 'scope of authority' concept." *Id.* at 901 (quoting *Truck Drivers Local No. 164 v. Allied Waste Sys., Inc.*, 512 F.3d 211, 217 (6th Cir. 2008)). Indeed, "[a]n arbitrator does not exceed his authority every time he makes an interpretive error; he exceeds that authority *only* when the [CBA] does not commit the dispute to arbitration." *Id.* (quoting *Michigan Family*, 475 F.3d at 756).

Here, there is no dispute that the RLA and the parties' agreement creating the Board limit the jurisdiction of the Board to disputes involving Trainmen, and the Board's jurisdiction with regard to Castellucci was thus limited to the merits of his claim that Illinois Central had violated the parties' CBA by dismissing Castellucci from his Trainman position. (*See* Doc. No. 15-1 at 10-11.) The Court agrees with SMART-TD, however, that this is the exact issue that the Board decided. The Board found, pursuant to the CBA, that Castellucci's rights as a Trainman include a right not to be disciplined a second time for the same conduct that he had already been disciplined for as a manager, and the dismissal from his Trainman position was improper because it was the second time he had been disciplined for the same conduct. (*See* Doc. No. 13-2 at 269.) Therefore, the Board acted within

9

its jurisdiction, as it ruled directly on the question submitted to it—whether the dismissal of Castellucci from his Trainman position was proper.

Nonetheless, Illinois Central claims that the Board's holding improperly gave legal consequence to Illinois Central's actions toward Castellucci in his management position. (Doc. No. 15-1 at 11.) But that is merely an argument that the Board erred in its assessment of Castellucci's rights as a Trainman. Illinois Central's argument is essentially that any discipline assessed on employees in manager positions is irrelevant to their rights as Trainmen, and that Trainmen may be disciplined a second time for conduct for which they had been disciplined as a manager. The Board disagreed. Instead, it held that once an employee in a management position has been demoted to a Trainman position, that employee's rights as a Trainman preclude Illinois Central from punishing the employee a second time. (*See* Doc. No. 13-2 at 269.) As the Sixth Circuit has made clear, even if that holding was incorrect, it does not mean that the Board exceeded its jurisdiction. That the Board assessed the nature of Castellucci's rights as an at-will employee while he was an Assistant Superintendent to determine whether he previously had been disciplined in the form of a demotion also does not mean that the Board exceeded its jurisdiction, as that issue was relevant to whether Castellucci's rights as a Trainman protected him from successive discipline and dismissal.

Illinois Central also argues that the Board's decision is improper because it effectively created a right for any management employee who retains seniority as a Trainman to return to his or her union represented position regardless of what misconduct he or she may have engaged in as a manager. (Doc. No. 15-1 at 12.) Illinois Central asserts that according to the Board's rationale, once Illinois Central removes a management employee from his or her management position, it cannot also terminate that employee's seniority as a Trainman and dismiss him or her in all capacities. (*Id.*)

10

Applying the Board's reasoning, Illinois Central argues that if a manager was arrested and charged with assaulting a subordinate, and happened to exercise seniority back to a union-represented craft position before being dismissed in all capacities, he or she would not thereafter be subject to discharge. (*Id.*)  But that is not the effect of the Board's holding.  The Board held that the CBA does not require Illinois Central to allow employees to return to their Trainmen positions if they engage in dismissible behavior while holding a managerial position. (Doc. No. 13-2 at 268 ("[T]here is nothing in the parties['] Agreement that requires the Carrier to automatically allow an employee to return to his/her craft for what it believes to be dismissible behavior, while holding a management position.").) Thus, under the Board's holding, a manager that commits a dismissible offense need not be permitted to exercise his or her seniority back to a Trainman position and would not be protected from dismissal in the way that Illinois Central contends.  The Board found, however, that in this case, Illinois Central allowed Castellucci to return to his Trainman position, which effectively disciplined him with a demotion, and, for that reason, he could not then be punished a second time as a Trainman. (*Id.* at 268-69.)  Thus, the Board did not create any additional rights for management employees, and did not resolve any disputes not committed to arbitration.

### b. Whether the Board Exceeded Its Jurisdiction by Failing to Decide the Merits of the Dispute

Next, Illinois Central contends that the Board failed to conform, or confine, itself to matters within its jurisdiction because it refused to adjudicate the merits of Castellucci's claim. (Doc. No.15-1 at 13-14.)  SMART-TD responds that the Board did address the merits of Castellucci's claim, but because it agreed with SMART-TD on the issue of successive discipline for the same behavior, the Board did not need to address whether Castellucci actually engaged in the alleged improper conduct.

11

(Doc. No. 17 at 9-11.) The Court concludes the Board did properly address the merits of Castellucci's claim.

In support of its argument, Illinois Central relies on *Union Pac. R.R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region (UP v. BLET)*, 558 U.S. 67 (2009). (Doc. No. 15-1 at 13-14.) In that case, the NRAB dismissed five employee claims for lack of jurisdiction because there was no evidence that conferencing had occurred in any of the cases, which the NRAB determined to be a jurisdictional requirement. *UP v. BLET*, 558 U.S. at 71, 77-78. The Supreme Court found that proof of conferencing was not a prerequisite to the NRAB's exercise of jurisdiction. *Id.* at 86. As a result, the Supreme Court held that "[b]y refusing to adjudicate cases on the false premise that it lacked power to hear them, the NRAB panel failed 'to conform, or confine itself,' to the jurisdiction Congress gave it." *Id.*

The Court agrees with SMART-TD that *UP v. BLET* does not support the vacatur of the Board's award, as this case is easily distinguishable from *UP v. BLET*. Unlike the NRAB in *UP v. BLET*, which refused to hear the cases before it because it falsely believed that it lacked jurisdiction over them, the Board addressed and ruled on the merits of Castellucci's claim. Indeed, the Board held that his dismissal was improper and ordered that he be reinstated. (Doc. No. 13-2 at 269.) While the Board could have been more precise with its use of the term "merits," it is clear from the opinion that the Board merely concluded that it did not have to address the underlying factual allegations regarding Castellucci's misconduct as an Assistant Superintendent because it concluded that Illinois Central had improperly disciplined Castellucci twice for the same misconduct. (*See id.* ("The Board having determined that the Claimant was twice disciplined for the same offense will not review the merits of the dispute nor will it make any determination of whether or not the allegations against the

Claimant had merit.").)  Accordingly, the Board did not improperly refuse to adjudicate Castellucci's claim.

### c. Whether the Board Exceeded Its Jurisdiction by Failing to Even Arguably Construe the CBA

Finally, Illinois Central argues the Board's award should be vacated because the Board ignored the plain language of the CBA when it held that Castellucci was not entitled to an investigation before he could be disciplined.  (Doc. No. 15-1 at 14-18.)  SMART-TD responds that misinterpretation of the CBA is not an appropriate basis to vacate the Board's award under the Court's limited review, and that the Board did not ignore the CBA.  (Doc. No. 17 at 11-12; Doc. No. 20 at 6.)  The Court concludes that the Board was arguably interpreting the CBA, and vacatur of the award is unwarranted.

The NRAB or a special adjustment board may fail to conform, or confine, itself to matters within the scope of its jurisdiction if it "was not even 'arguably construing or applying the contract' in resolving legal or factual disputes."  *BLET v. UTU*, 700 F.3d at 901 (quoting *Michigan Family*, 475 F.3d at 753).  The Sixth Circuit elaborated on this standard in *BLET v. UTU*:

> *Michigan Family* emphasized that "only the most egregious awards [would] be vacated" under the "arguably construing" standard.  *Id.* at 753.  Properly articulated, the analysis focuses on a single question:  did "the arbitrator appear[ ] to be engaged in" interpreting the agreement or agreements before him?  *Id.*  If so, the court's inquiry ends.  If it is unclear, the court "will presume that the arbitrator was doing just that."  *Id.*  With the window so narrowed, a court may vacate an award only in the "rare exception" when the arbitrator was "so ignorant of the contract's plain language" that "any contention that the arbitrator was construing the contract" is "implausible."  *Id.* (internal quotations, internal citation, and alteration omitted).  Put otherwise, if the arbitrator's construction is plausible, it must not be disturbed.  Accordingly, the outer limits of the "arguably construing" inquiry are reached only when the arbitrator's decision is " 'so untethered to' " the agreements at issue, *id.* at 752 (quoting *Garvey*, 532 U.S. at 512, 121 S.Ct. 1724 (Stevens, J., dissenting)), that he enters "the forbidden world of 'effectively dispensing his own brand of industrial justice,' " *id.* (citation, alteration, and internal quotations omitted).

13

*Id.* at 901-02; *see also Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers, Transp. Div. v. Port Auth. Trans-Hudson Corp.*, No. 19-4241, 2020 WL 3045724, at *2 (6th Cir. June 8, 2020). Courts may also "analyze both the form and substance of the Board's actions to determine if it was 'arguably construing' the materials before it," such as whether the board refers to the pertinent provisions of the agreement. *BLET v. UTU*, 700 F.3d at 905.

Here, the relevant provision of the CBA provides: "No Trainman shall be disciplined without a fair hearing (investigation) by an officer of the Company." (Doc. No. 13-2 at 242.) Illinois Central asserts the Board ignored this "crystal clear language" when it held that the CBA did not require a formal investigation of Castellucci's alleged misconduct after Castellucci had returned to his position as a Trainman. (Doc. No. 15-1 at 16.) However, the Court disagrees with this interpretation of the Board's holding.

In front of the Board, SMART-TD "argued that an 'at-will' employee promoted from its craft was subject to dismissal *while holding a managerial position* with no requirement that the employee be granted a formal Investigation under its Agreement." (Doc. No. 13-2 at 268 (emphasis added).) The Board appears to have agreed with that argument, finding that "there is nothing in the parties['] Agreement that requires the Carrier to automatically allow an employee to return to his/her craft for what it believes to be dismissible behavior, *while holding a management position, nor is there an additional requirement that the Carrier must call a formal Investigation to prove its charges of managerial misbehavior*" and that "Claimant's retention of seniority was a 'safety net' that guaranteed him a right to return to his craft for multiple reasons, but it did not require the Carrier to hold a formal Investigation for Claimant's alleged misdeeds *while holding a managerial position*." (*Id.* at 268-69 (emphasis added).) Thus, the Board appears to have held that *while Castellucci held a*

14

*management position as an Assistant Superintendent*, Illinois Central did not need to hold a formal investigation prior to disciplining him. That holding squares with the language of the CBA, which provides only that "[n]o *Trainman* shall be disciplined without a fair hearing (investigation) by an officer of the Company." (Doc. No. 13-2 at 242 (emphasis added).) It is also in line with other recent arbitration awards. *See, e.g.*, *Bhd. of Locomotive Engineers & Trainmen v. Union Pac. R.R. Co.*, 905 F.3d 537, 540 (7th Cir. 2018). Because the Board's award does not ignore the plain language of the CBA and was arguably construing its provisions, vacatur of the award is not appropriate.

Accordingly, the Court finds that none of the issues raised by Illinois Central demonstrate that the Board failed to conform, or confine, itself to matters within the scope of its jurisdiction. Nor, as noted above, does Illinois Central contend that the Board failed to comply with the requirements of the RLA or engaged in fraud or corruption. Consequently, there is no basis on which to vacate the Board's award under the Court's limited review pursuant to the RLA, and the award must be enforced.

## IV. Conclusion

For the reasons set forth above, SMART-TD's Motion for Summary Judgment (Doc. No. 14) is GRANTED, and Illinois Central's Motion for Summary Judgment (Doc. No. 15) is DENIED. Accordingly, Illinois Central is ordered to comply with the terms of Award No. 141 issued by the Board in Case No. 141 on April 23, 2019.

**IT IS SO ORDERED.**

Date: June 11, 2020

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE